Filed 11/17/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ARTUR HEFCZYC, | D071264 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2015-00037769-CU-MC-CTL) |
| RADY CHILDREN'S HOSPITAL-SAN DIEGO, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Carpenter Law, Gretchen Carpenter; Law Office of Barry L. Kramer and Barry L. Kramer for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Julie R. Dann; Hooper, Lundy & Bookman and Jennifer A. Hansen for Defendant and Respondent.

Artur Hefczyc appeals from an order denying his motion for class certification in his lawsuit against Rady Children's Hospital-San Diego (Rady).  On behalf of a proposed class, Hefczyc seeks declaratory relief to establish that Rady's form contract, signed by

patients or guarantors of patients who receive emergency room care, authorizes Rady to charge only for the reasonable value of its services, and that Rady therefore is not authorized to bill self-pay patients based on its master list of itemized charge rates, commonly referred to as the "Chargemaster" schedule of rates, which Hefczyc alleges is "artificial" and "grossly inflated." The trial court denied Hefczyc's motion for class certification, concluding that the class was not ascertainable, that common issues did not predominate, and that class action litigation was not a superior means of proceeding.

Hefczyc contends that the trial court erred in denying class certification because, as the complaint seeks only declaratory relief, the motion for class certification was brought under the equivalent of Federal Rules of Civil Procedure, rule 23(b)(1)(A) or (b)(2) (28 U.S.C.), for which he was not required to establish the ascertainability of the class, that common issues predominate and that class action litigation is a superior means of proceeding. Hefczyc also contends that even if the trial court properly imposed those three requirements in this action, the trial court abused its discretion in concluding that those requirements were not met. We conclude that Hefczyc's arguments lack merit, and accordingly we affirm the order denying class certification.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Hefczyc's Complaint*

On November 10, 2015, Hefczyc filed a complaint against Rady, in which he alleged that his minor child was treated on October 8, 2015, at Rady's emergency room. Hefczyc alleged that he had no outside source of payment for the emergency room visit,

2

such as insurance, and thus was a "self-pay" guarantor of his child's financial obligation to Rady. The total amount that Rady billed to Hefczyc for the emergency room visit was $9,831.34.

According to Hefczyc, the amount of the bill he received was based on "Chargemaster" rates developed by Rady. As alleged in the complaint, a "Chargemaster," as maintained by Rady and by other hospitals, is a spreadsheet "which include code numbers, descriptions, and gross charges for each of the thousands of items that are provided to patients." Rady explains that its Chargemaster contains thousands of different line items, relating to procedures, services and goods that are either bundled or specific. The Chargemaster and the number of line items on it changes each year.[1]

---

[1]     As our Supreme Court has explained, "[a] hospital charge description master, or chargemaster, is 'a uniform schedule of charges represented by the hospital as its gross billed charge for a given service or item, regardless of payer type.' (Health & Saf. Code, § 1339.51, subd. (b)(1).) California hospitals are required to make their chargemasters public and to file them with the Office of Statewide Health Planning and Development. (*Id.,* §§ 1339.51, subds. (a)(1), (b)(3), 1339.55, subd. (a).)" (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 561, fn. 7.) By regulation, hospitals "offering emergency and/or outpatient services" are required to "make available, upon request of a patient, a schedule of hospital charges." (Cal. Code Regs., tit. 22, § 70717, subd. (b).) Further, "In California, medical providers are expressly authorized to offer the uninsured discounts, and hospitals in particular are required to maintain a discounted payment policy for patients with high medical costs who are at or below 350 percent of the federal poverty level. (Bus. & Prof. Code, § 657, subd. (c); Health & Saf. Code, § 127405, subd. (a)(1)(A).)" (*Howell*, at p. 561.) Rady explains that based on the operation of these statutes, "[a]ll patients are initially billed the Chargemaster rates, the non-discounted rates for services. . . . Some individuals receive discounts and some do not, depending on factors such as whether they are insured and the insurance company negotiated a discounted rate, or if the patient is covered by a government program requiring reduced rates," with the result that "[n]ot all patients ultimately pay the undiscounted Chargemaster rates for a variety of reasons, including but not limited to the fact that charges can be reduced/adjusted because of negotiations, insurance agreements,

3

According to Hefczyc, the Chargemaster "provide[s] a convenient reference point for negotiating contracts and pricing schedules with commercial insurance carriers and with non-emergency care patients seeking elective treatment and service" but it "is not a pricing schedule which patients are expected to pay." The complaint alleges that Rady's actual reimbursement rates "are set forth in separate governmental regulations, contracts with commercial insurers, agreements with HMOs, etc."

As alleged by Hefczyc, when a patient seeks care in Rady's emergency room, all guarantors of emergency care patients are required by Rady to sign an agreement titled "Conditions of Treatment/Admission" (the COTA). The COTA contains a section relating to financial obligations, which states, among other things, that "Hospital charges will be in accordance with the Hospital's regular rates and terms." According to the complaint, "each patient is requested to sign" the COTA, "regardless of whether a patient is a Medicaid, privately insured, HMO, or self-pay patient."[2] Hefczyc alleges that "the

government benefits, charity care, discretionary reductions and bankruptcy."

[2]    As Rady points out, for reasons beyond its control, it sometimes provides treatment in its emergency department to patients who did not sign a COTA. Such treatment is provided under Health and Safety Code section 1317, subdivision (d), which states that "[e]mergency services and care shall be rendered without first questioning the patient or any other person as to his or her ability to pay therefor. However, the patient or his or her legally responsible relative or guardian shall execute an agreement to pay therefor or otherwise supply insurance or credit information promptly after the services are rendered." Although Hefczyc alleges that all patients are required to sign a COTA, he also recognizes that some patients may not have done so, and thus alleges that "even if a guarantor of a self-pay patient did not sign [the COTA], but the patient received emergency care from [Rady], he or she would still be obligated, under principles of quasi-contract, unjust enrichment, or other applicable law, to pay [Rady] for the reasonable value of the services rendered."

4

actual pricing terms that determine the reimbursement rates of the Hospital vary by category of patient" and depend on "governmental regulations and privately negotiated contracts." Hefczyc alleges that unlike other categories of patients, self-pay patients are billed at Chargemaster rates. Further, Hefczyc alleges that Chargemaster rates are "artificially inflated" and "unconscionable," are "at least three times what other patients pay for the same treatment and services," and "bear no relation to the Hospital's actual costs for providing treatment or services."

In interpreting the COTA's financial obligation provision, Hefczyc alleges that "the fact that all patients, regardless of category, are subject to the exact same pricing guarantee to pay 'in accordance with the Hospital's regular rates and terms,' despite the fact that each category of patients is charged differently, shows that the term 'the Hospital's regular rates and terms,' as a pricing term for the Hospital's services and treatment, is inherently vague, ambiguous and meaningless." According to the complaint, "[s]ince [the COTA] itself contains no pricing terms for the self-pay patients which are certain or readily identifiable, and fails to identify any means by which such pricing terms for self-pay patients can be made certain (i.e., it contains an 'open' pricing term), applicable law implies a contractual obligation to pay the reasonable value of the

5

services and treatment rendered, and for [Rady] to charge guarantors of self-pay patients no more than such reasonable value."[3]

Hefczyc alleges that the billed amount of $9,831.34 for his child's emergency care treatment was based on Chargemaster rates that were "grossly excessive, unfair, and unreasonable." Further, he alleges that because the COTA purportedly contains an " 'open' pricing term," under the law governing contracts with open pricing terms, Rady is authorized to charge only "the reasonable value of such services."

Hefczyc brought this action on behalf of himself and a class of persons defined as follows:

> "The guarantors of all persons who within the last four years, had one or more 'eligible patient hospital visits' to [Rady's] emergency department.
>
> "For purposes of this class definition, an 'eligible patient hospital visit' is defined as one for which (1) the patient was billed at the hospital's full Chargemaster rates; (2) there have been no full writeoffs, discounts or adjustments to the full Chargemaster billing under [Rady's] charity care policies; (3) the bill has not otherwise been waived or written off in full by [Rady]; and (4) no payments for

---

3       Stated another way in Hefczyc's appellate brief, his claim is that because the COTA "does not specify any pricing or pricing structure for any category of patients . . . [Rady] is permitted, under equitable principles such as quantum meruit, to charge uninsured emergency care patients for no more than the reasonable value of the services it provides." Citing Civil Code section 1611, Hefczyc contends that because the COTA "leaves the pricing term 'open,' " Rady is "limited to charging no more than the reasonable value of the services it provides." In his appellate brief, Hefczyc also explains his separate contention, reflected in part of the declaratory relief sought in the complaint, that "even if [the COTA] is ultimately interpreted as permitting [Rady] to charge self-pay patients' guarantors its Chargemaster rates, Hefczyc's position on the merits is that such provision is unconscionable."

6

the hospital visit have been made by other than the guarantor, the patient or the patient's representatives."[4]

The single cause of action alleged in the complaint is for declaratory judgment. Specifically, the complaint seeks the following declarations on behalf of the alleged class: (1) "a declaration . . . with respect to their payment obligations to [Rady], including a determination of the construction and validity of the financial obligation provision of their [COTA] with [Rady], specifically finding that [Rady's COTA] contains an 'open price' term, and does not permit [Rady] to bill and demand payment from self-pay emergency care patients based upon its Chargemaster rates"; (2) "a declaration that they are liable to [Rady], under [the COTA], for no more than the reasonable value of the treatment/services provided"; and (3) "a declaration that [Rady's] billing practices as they relate to Class members are unfair, unconscionable, and/or unreasonable."

In relating these prayers for declaratory relief to the request for class treatment in this action, the complaint alleges that a determination as to whether the COTA should be interpreted to "only require[] payment at a reasonable rate and for no more than the reasonable value of the services rendered" "should be made only once, and should be equally applicable to all Class members." The complaint alleges that "[w]hile such a Declaratory Judgment would not, in itself, determine the reasonable value of services rendered, it would allow a patient the ability to dispute [Rady's] unreasonable demands,

---

4      The class definition also provides that certain persons associated with Rady and any judicial officer assigned to this matter along with his or her immediate family are excluded from the class.

and provide the ability to negotiate an appropriate payment amount and reasonable payment terms."

B.      *The Class Action Certification Motion*

Hefczyc filed a motion for class certification, in which he sought an order certifying a class pursuant to Code of Civil Procedure section 382, "the equivalents of Rules 23(b)(1) and/or 23(b)(2) of the Federal Rules of Civil Procedure," or in the alternative, an order certifying a class based on a single issue pursuant to California Rules of Court, rule 3.765(b).[5]  In opposition, Rady argued, among other things, that certification under the equivalent of Federal Rules of Civil Procedure, rule 23(b)(1) or (b)(2) (28 U.S.C.) was not appropriate and that Hefczyc had not satisfied the requirements for class certification applied by California courts.

The trial court issued a ruling denying class certification.  With respect to Hefczyc's contention that a class should be certified under Federal Rules of Civil Procedure, rule 23(b)(1) and/or (b)(2) (28 U.S.C.), the trial court's ruling stated that it "disagrees" with Hefczyc's position.  At the hearing on the class certification motion, the trial court provided the further explanation that "given the facts of this case, it's . . . this Court's opinion" that the provisions in the Federal Rules of Civil Procedure cited by Hefczyc did not apply, "so the analysis . . . has to be done under the California rule."  The trial court therefore, "examine[d] this motion under principles that generally guide California courts in deciding whether to certify a class."  Applying the applicable

---

5      California Rules of Court, rule 3.765(b) states that "[w]hen appropriate, an action may be maintained as a class action limited to particular issues."

California case law, the trial court concluded that (1) the class was not ascertainable because "to identify class members could not be accomplished without unreasonable expense or time"; (2) "common questions of fact do not predominate over individualized questions"; and (3) class certification "would not provide substantial benefits that would render proceeding as a class superior to the alternatives."  The trial court further rejected the argument "that an issue should be certified in this case pursuant to [California Rules of Court, rule] 3.765(b)."

Hefczyc appeals from the order denying class certification.[6]

---

[6]     "The denial of certification to an entire class is an appealable order."  (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 (*Linder*).)

II

DISCUSSION

A.    *Standard of Review*

We review the order denying class certification for an abuse of discretion.  (*Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327 (*Sav-on*).)  " 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.' " (*Id.* at p. 326.)  "[A] trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made.' " (*Linder, supra*, 23 Cal.4th at p. 435.)  " 'Any valid pertinent reason stated will be sufficient to uphold the order.' " (*Id.* at p. 436.)

However, " 'appellate review of orders denying class certification differs from ordinary appellate review.  Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct.  [Citation.]  But when denying class certification, the trial court must state its reasons, and we must review those reasons for correctness.  [Citation.]  We may only consider the reasons stated by the trial court and must ignore any unexpressed reason that might support the ruling.  [Citations.] [¶] We will affirm an order denying class certification if any of the trial court's stated reasons was valid and sufficient to justify the order, and it is supported by substantial evidence.' " (*Mies v. Sephora U.S.A., Inc.* (2015) 234 Cal.App.4th 967, 980.)

" 'The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." ' " (*Brinker Restaurant Corp. v.*

10

*Superior Court* (2012) 53 Cal.4th 1004, 1023 (*Brinker*).)  However, "[w]hen evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them. . . .  [¶]  In particular, whether common or individual questions predominate will often depend upon resolution of issues closely tied to the merits."  (*Id*. at pp. 1023-1024.)

B.    *There Is No Merit to Hefczyc's Contention That the Requirements of Federal Rules of Civil Procedure, Rule 23 (28 U.S.C.) Should Apply Here, Rather than the Requirements Set Out in California Case Law*

1.    *Applicable California and Federal Standards for Class Certification*

Hefczyc's main appellate argument is that because his complaint seeks only declaratory relief, the trial court should have applied the class certification requirements set forth in Federal Rules of Civil Procedure, rule 23(b)(1)(A) or (b)(2) (28 U.S.C.) rather than the requirements set forth in California case law.

a.    *Class Certification Requirements in California Courts*

The authority for class action litigation in California is set forth in Code of Civil Procedure section 382, which provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."  For several decades, our Supreme Court has consistently "articulated clear requirements for the certification of a class.  The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives.  . . .  'In turn, the "community of interest

11

requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' " (*Brinker*, *supra*, 53 Cal.4th at p. 1021, citations omitted.)

These standards have been set forth and consistently applied numerous times by our Supreme Court. (See*, e.g., Daar v. Yellow Cab Co*. (1967) 67 Cal.2d 695, 704 (*Daar*); *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809; *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459 (*City of San Jose*); *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355, 360 (*Occidental Land*); *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470; *Linder*, *supra*, 23 Cal.4th at p. 435; *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913 (*Washington Mutual)*; *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1103 (*Lockheed*); *Sav-On, supra*, 34 Cal.4th at p. 326; *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089; *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 529 (*Ayala*).) Never has our Supreme Court indicated that it would diverge from these requirements based on the type of claims presented in a lawsuit. Indeed, our Supreme Court long ago indicated that "it *uniformly* has been held that two requirements must be met in order to sustain *any* class action: (1) there must be an ascertainable class [citations]; and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented." (*Daar,* at p. 704, italics added.)

Our Supreme Court has also consistently applied the long-standing and well-settled requirement that the proponent of class certification must establish that there are

12

substantial benefits from certification that render proceeding as a class superior to the alternatives. (See, e.g., *Occidental Land, supra*, 18 Cal.3d at p. 360 ["It must be shown that a substantial benefit both to the litigants and to the court will result, and the burden of that showing falls on the plaintiff"]; *City of San Jose, supra*, 12 Cal.3d at p. 460 ["we start from certain settled premises: Before the imposition of a judgment binding on absent parties can be justified, it must be shown that substantial benefits both to the litigants and to the court will result"]; *Daar, supra*, 67 Cal.2d at p. 713 ["substantial benefits resulting from class litigation, both to the litigants and to the court, should be found before the imposition of a judgment binding on absent parties can be justified"]; *Ayala, supra*, 59 Cal.4th at p. 530 [requiring "substantial benefits from certification that render proceeding as a class superior to the alternatives"].)

In this case, as we have explained, the trial court applied the long-settled standards for class certification set forth in our Supreme Court's opinions, and it denied class certification because it found that three of the requirements were lacking: (1) the class was not ascertainable; (2) common questions of law or fact did not predominate; and (3) Hefczyc had not established that substantial benefits from certification would render proceeding as a class superior to the alternatives.[7]

---

[7] These three requirements are sometimes referred to by the shorthand reference of "ascertainability," "predominance" and "superiority" (*Thompson v. Automobile Club of Southern California* (2013) 217 Cal.App.4th 719, 733 (*Thompson*)), and we will use those terms here.

13

b.       *Class Certification Requirements in Federal Court*

In contrast, Federal Rules of Civil Procedure, rule 23 (28 U.S.C.) does not require that ascertainability, predominance and superiority be established to obtain certification in every type of case.  As relevant here, Federal Rules of Civil Procedure, rule 23 (28 U.S.C.) provides as follows:

"(a) Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

"(1) the class is so numerous that joinder of all members is impracticable;

"(2) there are questions of law or fact common to the class;

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

"(4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Types of Class Actions.  A class action may be maintained if Rule 23(a) is satisfied and if:

"(1) prosecuting separate actions by or against individual class members would create a risk of:

"(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

"(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

"(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

14

"(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

As set forth in this rule, only if a class action is certified under Federal Rules of Civil Procedure, rule 23(b)(3) (28 U.S.C.) is the court required to make a finding similar to the predominance and superiority requirements under California law, namely, that "questions of law or fact common to class members predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (*Ibid.*; *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 362 (*Dukes*) ["predominance" and "superiority" apply only in classes certified under Fed. Rules Civ. Proc., rule 23(b)(3) (28 U.S.C.)].) Although Federal Rules of Civil Procedure, rule 23 does not refer to an ascertainability requirement, many federal courts "have held that it is an implicit requirement of class certification." (*Cole v. City of Memphis* (6th Cir. 2016) 839 F.3d 530, 541 (*Cole*) [citing other cases].) However, several federal circuit courts have also held that ascertainability is *not* required when a class is certified under Federal Rules of Civil Procedure, rule 23(b)(2) (28 U.S.C.). (See *Cole*, at p. 542 [holding that no ascertainability is required

15

under Fed. Rules Civ. Proc., rule 23(b)(2) (28 U.S.C.), and citing other federal circuit court opinions reaching the same conclusion].)[8]

---

[8] Although Hefczyc states that no finding of ascertainability is required in federal court to certify a class under Federal Rules of Civil Procedure, rule 23(b)(1) or (b)(2) (28 U.S.C.), the only case law he cites discusses certification under Federal Rules of Civil Procedure, rule 23(b)(2) (28 U.S.C.).

c. *California Courts May Look to Federal Rules of Civil Procedure, Rule 23 (28 U.S.C.) in the Absence of State Precedent*

"It is well established that in the absence of relevant state precedents our trial courts are urged to follow the procedures prescribed in rule 23 of the Federal Rules of Civil Procedure for conducting class actions."  (*Green v. Obledo* (1981) 29 Cal.3d 126, 145-146 (*Green*).)  However, "[i]t is only in the *absence* of relevant state precedent that courts turn to federal law and rule 23 for guidance."  (*Stephen v. Enterprise Rent-A-Car* (1991) 235 Cal.App.3d 806, 814.)  "As a general rule, California courts are not bound by the federal rules of procedure but may look to them and to the federal cases interpreting them for guidance or where California precedent is lacking.  . . .  California courts have never adopted Rule 23 as 'a procedural strait jacket.  To the contrary, trial courts [are] urged to exercise pragmatism and flexibility in dealing with class actions.' "  (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 239-240, citations omitted.)

d. *Hefczyc Contends That the Trial Court Should Have Applied the Equivalent of Federal Rules of Civil Procedure, Rule 23(b)(1)(A) or (b)(2) (28 U.S.C.)*

Characterizing the relief sought in his complaint as simply "a declaration as to the meaning of a single Contract provision" which would "interpret a few lines of [Rady's COTA] on a class[-]wide basis," Hefczyc contends that the trial court should have applied the "equivalent" of Federal Rules of Civil Procedure, rule 23(b)(1)(A) or (b)(2) (28 U.S.C.) when deciding the class certification motion because California lacks

17

precedent as to which class certification standards apply when the plaintiff seeks nothing more than declaratory relief on a class-wide basis.

Specifically, pointing out that Federal Rules of Civil Procedure, rule 23(b)(1)(A) (28 U.S.C.) authorizes class certification when "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" (*ibid.*), Hefczyc contends that provision applies here because, in the absence of a certified class, Rady "could be limited to enforcing collection for no more than the reasonable value of its services in one legal action . . . while being authorized to enforce collection of its full Chargemaster rates in a different action."[9] Further, pointing out that Federal Rules of Civil Procedure, rule

_____

[9] Although we need not resolve the issue, we note that under federal law, Hefczyc might not be able to establish that his case qualifies for treatment under Federal Rules of Civil Procedure, rule 23(b)(1)(A) (28 U.S.C.). As we have explained, rule 23(b)(1)(A) provides for class certification when "the prosecution of separate actions by or against individual members of the class would create a risk of . . . inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." However, "[a] widely-recognized limitation on [Federal Rules of Civil Procedure, rule 23] (b)(1)(A) certification requires that there be 'more than the mere possibility that inconsistent judgments and resolutions of identical questions of law would result if numerous actions are conducted instead of one class action.' " (*In re Integra Realty Resources, Inc.* (10th Cir. 2004) 354 F.3d 1246, 1264.) "Thus, [Federal Rules of Civil Procedure, rule] 23(b)(1)(A) is designed to protect against the nonclass party's being placed in a stalemated or conflicted position and is applicable only to actions in which there is not only a risk of inconsistent adjudications but also where the nonclass party could be sued for *different and incompatible affirmative relief.*" (*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc., et al.* (D. Kan. 1994) 158 F.R.D. 681, 687.) Hefczyc argues only that Rady might be subject to inconsistent rulings on the contract interpretation question if numerous individual suits were brought, not that Rady would be

23(b)(2) (28 U.S.C.) authorizes class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" (*ibid.*), Hefczyc argues that provision applies here because Rady has "used common Contract language and admittedly charged all Class members its Chargemaster rates." According to Hefczyc, "[Rady] has acted on grounds that apply generally to the Class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the Class as a whole, is appropriate under the standard set forth in [Federal Rules of Civil Procedure,] rule 23(b)(2)."[10]

Hefczyc argues that because the trial court should have applied Federal Rules of Civil Procedure, rule 23(b)(1)(A) or (b)(2) (28 U.S.C.) in deciding the class certification motion, it also should not have required that Hefczyc establish ascertainability,

_____

placed in a stalemated position because of the different judgments or that the relief ordered would be incompatible.

[10] Under federal law, Hefczyc also might not be able to establish that his case qualifies for treatment under Federal Rules of Civil Procedure, rule 23(b)(2). That rule "applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." (*Dukes*, *supra*, 564 U.S. at pp. 360-361.) In light of the fact that Hefczyc seeks a declaration that would serve only as a *first step* to each class member obtaining some *final* relief from Rady in a different proceeding, in which the reasonableness of the specific charges incurred by that class member would be at issue, Hefczyc may not be able to establish that his lawsuit seeks the "final injunctive relief or corresponding declaratory relief . . . respecting the class as a whole" (Fed. Rules Civ. Proc., rule 23(b)(2) (28 U.S.C.)) that is necessary for class certification under the federal rule.

19

predominance and superiority as a prerequisite for obtaining class certification. As Hefczyc contends, because ascertainability, predominance and superiority would not be required in a federal court proceeding when a class is certified pursuant to Federal Rules of Civil Procedure, rule 23(b)(1)(A) or (b)(2) (28 U.S.C.), the trial court should not have applied those requirements here.

As we will explain, we reject Hefczyc's argument. No California authority supports the contention that ascertainability, predominance and superiority are not required when a proposed class action would be certified under Federal Rules of Civil Procedure, rule 23(b)(1)(A) or (b)(2) (28 U.S.C.) *if it were proceeding in federal court*. On the contrary, case law consistently holds that ascertainability, predominance and superiority are always required to certify a class action in California under Code of Civil Procedure section 382.

2.     *No California Authority Supports Hefczyc's Contention That He Is Not Required to Establish Ascertainability, Predominance and Superiority in a Proposed Class Action Seeking Only Declaratory Relief*

As we have explained, in a long list of opinions, our Supreme Court has "*uniformly*" required a plaintiff seeking class certification to establish ascertainability, predominance and superiority "in order to sustain *any* class action." (*Daar, supra*, 67 Cal.2d at p. 704, italics added.) Our high court has never provided any indication that it would diverge from these requirements in a case seeking only declaratory or injunctive relief.

Several intermediate appellate court opinions in California, including one case on which Hefczyc heavily relies (*Capitol People First v. State Dept. of Developmental*

20

*Services* (2007) 155 Cal.App.4th 676 (*Capitol People First*)), and one from this court (*Reyes v. Board of Supervisors of San Diego County, et al.* (1987) 196 Cal.App.3d 1263 (*Reyes*)), considered proposed class actions that sought only declaratory and injunctive relief. As we will explain, both of those opinions expressly required that the plaintiff establish ascertainability, predominance and superiority to obtain class certification.

In *Capitol People First*, the relief requested consisted of "declaratory and injunctive relief as well as orders pursuant to a writ of mandate compelling defendants to comply with enumerated duties" requiring government departments and officials to comply with the laws applicable to persons with developmental disabilities. (*Capitol People First*, *supra*, 155 Cal.App.4th at p. 686.) The court explained that under Code of Civil Procedure section 382, "the proponent of certification must establish the existence of a well-defined community of interest among class members. . . . The community of interest requirement embraces three factors: (1) common questions of law or fact that predominate over questions affecting individual members; (2) class representatives with claims or defenses that are typical of the class; and (3) class representatives who can adequately represent the class. . . . [¶] As well, in assessing the appropriateness of certification trial courts are charged with carefully weighing the respective benefits and burdens of class litigation to the end that maintenance of the class action will only be permitted where substantial benefits accrue to the litigants and the court. . . . [T]he substantial benefits analysis raises the question whether a class action is superior to

21

individual lawsuits and other alternative procedures for resolving the controversy."

(*Capitol People First*, at pp. 688-689, citations omitted.)[11]

This court in *Reyes, supra*, 196 Cal.App.3d 1263, considered a proposed class action complaint seeking solely declaratory and injunctive relief to stop the County of San Diego's practice of depriving general relief recipients of benefits for failing to comply with certain rules. Although noting that the courts "have sought guidance from . . . the Federal Rules of Civil Procedure, rule 23, in the absence of state precedent," *Reyes* nevertheless identified and applied the class action certification requirements of ascertainability, predominance and superiority. (*Id.* at p. 1271.) Citing our Supreme Court's precedent, *Reyes* explained that the certification of a class in California "require[s] the showing of an ascertainable class and a well-defined community of

_____

11    Hefczyc appears to rely on *Capitol People First* because it contains the following footnote: "In the absence of relevant state precedent, trial courts are urged to follow the procedures set forth in rule 23 of the Federal Rules of Civil Procedure for conducting class actions. (*Green*[, *supra*,] 29 Cal.3d 126, 145-146.) As we have no specific statutory provision detailing procedures for class plaintiffs pursuing only injunctive and declaratory relief, the trial court appropriately looked to [Federal Rules of Civil Procedure] rule 23(b)(2) for guidance." (*Capitol People First, supra*, 155 Cal.App.4th at p. 692, fn. 12.) However, *Capitol People First* was not referring to Federal Rules of Civil Procedure, rule 23(b)(2) (28 U.S.C.) on the issue of whether ascertainability, predominance and superiority were required for class certification. Instead, the trial court had cited the federal rule in commenting that class certification might be proper where, on behalf of the class, the defendant sought "injunctive and declaratory relief and centering on whether [plaintiff] demonstrated that [defendants] ' "acted or refused to act on grounds generally applicable to the class." ' " (*Capitol People First*, at p. 691.) Hefczyc reads too much into the footnote. *Capitol People First* simply commented that in deciding whether common questions of law or fact predominated, it was appropriate for the trial court to look to the federal rule for the general principle that a common question might predominate when the defendant has acted or refused to act on grounds generally applicable to the class.

22

interest in questions of law and fact among the members of that class," and that "[a]s to the community of interest requirement, it consists of three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Id.* at pp. 1270-1271.) Further, referring to the superiority requirement, *Reyes* stated that "[t]he party seeking class certification bears the burden of . . . showing that substantial benefits, both to the litigants and to the court, will result from class certification." (*Id.* at p. 1271.)

Rady cites other California cases in which the relief sought was solely declaratory or injunctive, but which did not diverge from the standard class action certification requirements that our Supreme Court has consistently applied. (*Mendoza v. County of Tulare* (1982) 128 Cal.App.3d 403, 416 [in a case seeking declaratory and injunctive relief on behalf of jail inmates, the court applied the rule that "[i]n order to sustain a class action, parties must allege facts sufficient to establish (1) an ascertainable class; and (2) 'a well defined community of interest in the questions of law and fact involved affecting the parties to be represented' "]; *Adkins v. Leach* (1971) 17 Cal.App.3d 771, 777 [in a proposed class action seeking declaratory and injunctive relief on behalf of welfare recipients, the court applied community of interest and ascertainability requirements].)

In support of Hefczyc's position that because he seeks only declaratory relief, the trial court should have applied the class certification standards set forth in Federal Rules of Civil Procedure, rule 23(b)(1) or (b)(2) (28 U.S.C.), Hefczyc cites *Frazier v. City of Richmond* (1986) 184 Cal.App.3d 1491 and *Bell v. American Title Ins. Co., et al.* (1991)

23

226 Cal.App.3d 1589. Those cases relied on Federal Rules of Civil Procedure, rule 23(b)(1) and (b)(2) (28 U.S.C.) to conclude that notice to the class and an opportunity to opt out of the class were not required in a case seeking primarily injunctive or declaratory relief. (*Frazier*, at p. 1501; *Bell*, at p. 1608.)[12] However, neither of those opinions addressed whether a California court may dispense with the requirements that our Supreme Court has set forth for class action certification, including ascertainability, predominance and superiority.

In sum, there is no gap in California precedent to be filled by reference to Federal Rules of Civil Procedure, rule 23(b)(1)(A) or (b)(2) (28 U.S.C.) on the issue of what class certification standards must be met when a plaintiff seeks only declaratory or injunctive relief on behalf of a class. Even when the plaintiff seeks solely declaratory or injunctive relief, California case law follows the well-established requirements that our Supreme Court has consistently stated, namely, (as relevant here) that the plaintiff must establish that (1) the class is ascertainable; (2) common questions predominate; and (3) a class action would provide substantial benefits, making it superior to other procedures for

---

[12] A subsequent opinion also has recognized that Federal Rules of Civil Procedure, rule 23(b)(2) (28 U.S.C.) might be helpful for California courts in considering whether class members should be provided the right to opt out of a particular class action, but also noted that "[s]trictly speaking, California class actions can neither be certified pursuant to [Federal Rules of Civil Procedure] rule 23(b)(2) (28 U.S.C.) nor barred from certification by the rule, and even the United States Supreme Court's elucidation as to what is and is not permitted by Rule 23(b)(2) (28 U.S.C.) can be only advisory." (*Carter v. City of Los Angeles* (2014) 224 Cal.App.4th 808, 824.)

resolving the controversy. Therefore, the trial court did not err in concluding that class action certification should be denied if Hefczyc did not establish those requirements.[13]

C.    *The Trial Court Did Not Abuse Its Discretion in Determining That Hefczyc Did Not Establish Ascertainability, Predominance and Superiority*

Having concluded that the trial court properly required Hefczyc to establish ascertainability, predominance and superiority to prevail in his class certification motion, we next consider whether the trial court abused its discretion in concluding that those requirements were not met.

1.    *Ascertainability*

" 'A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description.' . . . 'Ascertainability is achieved "by defining the class in terms of objective characteristics

---

[13]    Our recent opinion *Kendall v. Scripps Health* (2017) 16 Cal.App.5th 553 (*Kendall*) also supports the conclusion that the requirements of ascertainability, predominance and superiority apply here, despite Hefczyc's contention that such a showing is not required for class certification of claims seeking declaratory relief and that the approach of the federal courts when certifying a class under Federal Rules of Civil Procedure, rule 23(b)(1)(A) and (b)(2) (28 U.S.C.) should be applied in California courts. In *Kendall*, plaintiffs sought certification of a class in a lawsuit that asserted claims for damages under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), but which also sought declaratory relief as to the meaning of a contract provision stating that a person receiving services from the health care facility would pay the facility's Chargemaster rates. The plaintiff in *Kendall* argued that with respect to the declaratory relief claim, "federal rules would permit him to obtain declaratory relief without regard to California requirements of community of interest and ascertainability of the class." (*Kendall*, at. p. 576.) Focusing on the "very closely related nature of his declaratory relief claims" to the claims for damages, *Kendall* rejected the argument and concluded that California standards for certifying a class were applicable. (*Id.* at p. 578.)

and common transactional facts making the ultimate identification of class members possible when that identification becomes necessary." ' . . . 'Whether a class is ascertainable is determined by examining (1) the class definition, (2) the size of the class, and (3) the means available for identifying class members' at the remedial stage." (*Aguirre v. Amscan Holdings, Inc.* (2015) 234 Cal.App.4th 1290, 1299-1300 (*Aguirre*), citations omitted.)

" 'While often it is said that "[c]lass members are 'ascertainable' where they may be readily identified without unreasonable expense or time by reference to official records" [citations], that statement must be considered in light of the purpose of the ascertainability requirement.' . . . 'Ascertainability is required in order to give notice to putative class members as to whom the judgment in the action will be res judicata.' . . . The goal in defining an ascertainable class 'is to use terminology that will convey "sufficient meaning to enable persons hearing it to determine whether they are members of the class plaintiffs wish to represent." [Citation.] ". . . Otherwise, it is not possible to give adequate notice to class members or to determine after the litigation has concluded who is barred from relitigating." ' " (*Aguirre*, *supra*, 234 Cal.App.4th at pp. 1300-1301, citations omitted.) " 'Class certification is properly denied for lack of ascertainability when the proposed definition is overbroad and the plaintiff offers no means by which only those class members who have claims can be identified from those who should not

26

be included in the class.' " (*Hale v. Sharp Healthcare* (2014) 232 Cal.App.4th 50, 58-59 (*Hale*).)[14]

Here, Hefczyc defined the proposed class as follows: "The guarantors of all persons, who, within the last four years, had one or more 'eligible patient hospital visits' to [Rady's] emergency department. [¶] For purposes of this class definition, an 'eligible patient hospital visit' is defined as one for which (1) the patient was billed at the hospital's full Chargemaster rates; (2) there have been no full writeoffs, discounts or adjustments to the full Chargemaster billing under [Rady's] charity care policies; (3) the bill has not otherwise been waived or written off in full by [Rady]; and (4) no payments for the hospital visit have been made by other than the guarantor, the patient or the patient's representatives."

---

14      Hefczyc contends that by relying on California case law defining the ascertainability requirement, the trial court improperly imposed an "administrative feasibility" requirement that some federal courts do not require. In support of this argument, Hefczyc cites *Briseno v. ConAgra Foods, Inc.* (9th Cir. 2017) 844 F.3d 1121, 1126, which held that "the language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification." As used in *Briseno*, administrative feasibility means that "a class proponent must proffer an administratively feasible way to identify class members." (*Id.* at p. 1125, fn. 4.) However, as *Briseno* acknowledges, the issue of whether administrative feasibility is required is disputed among the federal circuit courts. (*Briseno*, at p. 1127 [acknowledging that the Third Circuit Court of Appeals requires administrative feasibility], citing *Byrd v. Aaron's Inc.* (3d Cir. 2015) 784 F.3d 154, 162-163.) We reject Hefczyc's contention that we should follow an unsettled line of federal court authority. Instead, we apply the well-settled rules for determining ascertainability set forth in California case law. As we have explained, that case law sets forth a consideration similar to administrative feasibility in that we consider whether class members " ' " ' "may be readily identified without unreasonable expense or time by reference to official records." ' " ' " (*Hale*, *supra*, 232 Cal.App.4th at p. 58.)

In opposition to the class certification motion, Rady submitted an extensive declaration from Michael Hester, Rady's Senior Director of Revenue Cycle. Hester explained that "each patient account's history has to be manually evaluated individually to determine whether the rates collected and those that are outstanding are the full Chargemaster amounts or some other amount." This is because self-pay patients may obtain a variety of different discounts based on their unique circumstances. Further, patients originally may have been billed at full Chargemaster rates, only to later establish they were covered by insurance or qualified for governmental health benefits. Rady would have to manually review each individual account to determine if that is the case. Moreover, even patients who are covered by insurance may have paid Chargemaster rates for some services that were not covered by insurance. That circumstance also can be determined only by a manual review of each patient's account. Another problem in ascertaining whether a patient paid the full Chargemaster rate arises because "if a patient's account is sent to collections for debt collection, the vendor has authority in certain situations to provide a discount to encourage payment."

Hester explained that given all of these complexities and the limitations of Rady's billing system, it would take an individual inquiry into hundreds of thousands of patient records to determine whether a patient falls under the class definition. Hester explained, that "[Rady] does not maintain patient information in a manner that permits access to certain data points (including whether the patient was finally determined to be self-pay) on an aggregated basis. To figure out what a patient/guarantor has paid for his/her encounter, if anything, or to assess whether the patient later qualified for Medicare, Medi-

28

Cal or other governmental assistance program, [Rady] would have to conduct an individual inquiry into hundreds of thousands of patient's records. The same is true if [Rady] was asked whether and to what extent a patient was offered and accepted any discount based on any financial assistance or charity program, and the resulting payments made, if any. A manual, line-by-line, document by document review would be required, and the results of that review could change moment by moment as more is learned about patients and financial classes are updated." Hester summarized, "This would be extremely overly burdensome for [Rady] and would take hundreds to thousands of hours to review individual accounts. . . . The information requested by plaintiff to define plaintiff's purported class would require individual inquiries into thousands to millions of individual records."

Based on Hester's declaration, the trial court concluded that "the class here is not ascertainable because to identify class members could not be accomplished without unreasonable expense or time."

Hefczyc takes issue with the trial court's conclusion, contending that it is not supported by substantial evidence. Hefczyc contends that Hester's explanation of the time-consuming nature of determining the membership of the class purportedly ignores that the class definition is "based on [Rady's] electronic payment records, and no 'individual' review is required, except to the extent an electronic database query is considered an 'individual review.' " Hefczyc cites no evidentiary support for his contention that no individual review of Rady's records is required, and he does not cite to any portion of the class definition that would limit the inquiry required to Rady's

29

electronic database.  Indeed, Hefczyc refers to no evidence to dispute Hester's statement that it would be extremely time-consuming for Rady to review its records to determine the membership of the class.  Therefore, Hester's declaration constitutes substantial evidence to support the trial court's finding that it would unreasonably burden Rady to identify the members of the class.

Relying on case law establishing that, in certain instances, a class may be ascertainable if members are able to self-identify that they belong to a class (*Nicodemus v. Saint Francis Memorial Hospital* (2016) 3 Cal.App.5th 1200, 1217), Hefczyc argues that the class in this case is ascertainable because it would be possible for class members to self-identify based on the class definition.  Hefczyc also points out that it is not necessarily the case that individual class members will need to be identified so that notice can be sent to them.  Hefczyc argues that if the trial court ends up requiring that notice be given in this case, "it does not have to be in the form of actual notice to individual class members, such that Class member identification would be required.  For example,
. . . notice can be given by publication, which would not require identification of individual Class members."  In that situation, self-identification of class members could be a plausible approach.

We reject the argument because the proposed class definition is not drafted in such a way that class members would be able to identify for themselves that they fall within the class by reviewing the class definition.  Specifically, the first requirement for class membership as set forth in Hefczyc's proposed class definition is that "the patient was billed at the hospital's full Chargemaster rates."  The class definition does not explain the

30

term "full Chargemaster rates," and it is unlikely that a person reading the class definition would understand what is meant by that term. Further, as shown by the bills that Rady sent to Hefczyc, which are included in the record, the term "Chargemaster" does not appear anywhere in the bills to inform the recipient that he or she is being billed based on Chargemaster rates. Accordingly, we conclude that the class cannot be made ascertainable by relying on members of the public to self-identify whether they fall within the class definition in the event that notice is given by publication to the general public.

In sum, we conclude that the trial court did not abuse its discretion in ruling that Hefczyc failed to establish the ascertainability of the class.[15]

2.      *Predominance*

The requirement of predominance arises because "[p]laintiffs' burden on moving for class certification . . . is not merely to show that some common issues exist, but, rather, to place substantial evidence in the record that common issues predominate." (*Lockheed, supra*, 29 Cal.4th at p. 1108.) "The 'ultimate question' the element of

---

[15]      Hefczyc argues that in the event we agree with the trial court that the class is not ascertainable, we should remand with directions that he be permitted to amend the class definition as follows: "all guarantors of individuals who, from November 11, 2011 to the date of class certification, received treatment at [Rady] and who were directly billed by [Rady] at Chargemaster rates on one or more occasions." We need not address this argument, as we find the other requirements for class certification to be lacking, regardless of whether the problems with ascertainability can be remedied. We do however note that Hefczyc's revised class definition raises serious overbreadth problems, as Hester's declaration establishes that many patients who *originally* receive a bill at Chargemaster rates will not end up paying that amount because they will receive a discount or later determine that the charges are covered by insurance or a government program.

31

predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' . . . The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' . . . A court must examine the allegations of the complaint and supporting declarations . . . and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible." (*Brinker, supra*, 53 Cal.4th at pp. 1021-1022, citations omitted.)

As we are required to inquire " 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment' " (*Brinker, supra*, 53 Cal.4th at p. 1021), we must first closely examine the theory of recovery set forth in the complaint. According to Hefczyc's appellate brief, the complaint seeks nothing more than the determination of a simple contract interpretation question requiring "a declaration as to the meaning of a single Contract provision." Hefczyc claims because the relief he seeks is limited to a simple contract interpretation question, he "does not ask the trial court to determine what the 'reasonable value' of [Rady's] services is for himself or any other Class member." However, a review of Hefczyc's complaint shows that the declaratory relief sought in this action is far more complicated than interpreting a single contract provision.

As we have explained, the complaint seeks the following declaratory relief on behalf of the proposed class: (1) "a declaration . . . with respect to their payment

32

obligations to [Rady], including a determination of the construction and validity of the financial obligation provision of their [COTA] with [Rady], specifically finding that [Rady's COTA] contains an 'open price' term, and does not permit [Rady] to bill and demand payment from self-pay emergency care patients based upon its Chargemaster rates"; (2) "a declaration that they are liable to [Rady], under [the COTA], for no more than the reasonable value of the treatment/services provided"; and (3) "a declaration that [Rady's] billing practices as they relate to Class members are unfair, unconscionable, and/or unreasonable."

Although Hefczyc claims that he is not requesting a ruling on the reasonable value of Rady's services, as we will explain, in order to afford relief under the first and third requests made in Hefczyc's complaint, the trial court will necessarily be required to determine whether Rady's Chargemaster rates are reasonable, creating an unmanageable individualized factual inquiry that differs as to each class member and that is accordingly unsuited to resolution in a class action proceeding.

Specifically, turning to the first declaration sought by Hefczyc, in order to issue a declaration that the COTA contains an " 'open price' term" and thus "does not permit [Rady] to bill and demand payment . . . based upon its Chargemaster rates," the trial court will have to determine that the Chargemaster rates do not represent the reasonable value of Rady's services. This is because, as Hefczyc explains in his appellate brief, his legal theory is that because the COTA purportedly contains an open price term, Rady "is limited to charging no more than the reasonable value of the services it provides." In order to issue the declaratory relief requested by Hefczyc that the COTA "does not permit

33

[Rady] to bill and demand payment . . . based upon its Chargemaster rates," the trial court will necessarily be required to decide whether the Chargemaster rates represent the reasonable value of Rady's services. Only if the Chargemaster rates do not represent the reasonable value of Rady's services would there be any merit to Hefczyc's position that the purported " 'open price' term" in the COTA precludes Rady from billing at its Chargemaster rates.

A similar finding as to whether the Chargemaster rates represent the reasonable value of Rady's services is required as part of the declaration sought by Hefczyc that "[Rady's] billing practices as they relate to Class members are unfair, unconscionable, and/or unreasonable." Self-evidently, because Hefczyc expressly seeks a declaration that Rady's billing practices are "unreasonable," in order to issue such a declaration the trial court would be required to consider the reasonableness of Rady's Chargemaster rates. In a similar case considering a challenge to the unconscionability of another hospital's Chargemaster rates, the court explained a determination regarding the unconscionability of the rates requires that the court " 'look to the basis and justification for the price [citation], including "the price actually being paid by . . . other similarly situated consumers in a similar transaction." ' [Citation.] In addition, 'courts consider not only the market price, but also the cost of the goods or services to the seller [citations], the inconvenience imposed on the seller [citation], *and the true value of the product or service*.' " (*Moran v. Prime Healthcare Management, Inc.* (2016) 3 Cal.App.5th 1131, 1148, italics added.) Thus, to issue a declaration that Rady's Chargemaster rates are

34

unconscionable, the trial court would be required to consider whether the Chargemaster rates represent the reasonable value of Rady's services.

As Rady has made clear in its appellate brief, it believes its Chargemaster rates represent the reasonable value of its services. Thus, to issue the declaratory relief sought by Hefczyc, the trial court will have to resolve the disputed issue of whether Rady's Chargemaster rates represent the reasonable value of those services.

The reasonable value of Rady's services is not a common issue that is amenable to class treatment. As the evidence submitted by Rady establishes, Rady's Chargemaster contains thousands of individual line-item charges. Each individual class member will have received a different set of services from Rady, corresponding to different rates on Rady's Chargemaster. As case law explains, the evidence required for a determination of the reasonable value of a hospital's services is wide-ranging and differs based on the type of service at issue. "[T]he facts and circumstances of the particular case dictate what evidence is relevant to show the reasonable market value of the services at issue, i.e., the price that would be agreed upon by a willing buyer and a willing seller negotiating at arm's length. Specific criteria might or might not be appropriate for a given set of facts." (*Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, 1274-1275 [discussing reasonable value of services rendered by hospital during period not covered by written contract with insurance carrier].) "[R]elevant evidence would include the full range of fees that Hospital both charges and accepts as payment for similar services. The scope of the rates accepted by or paid to Hospital by other payors indicates the value of the services in the marketplace. From that

35

evidence, along with evidence of any other factors that are relevant to the situation, the trier of fact can determine the reasonable value of the particular services that were provided, i.e., the price that a willing buyer will pay and a willing seller will accept in an arm's length transaction." (*Id*. at p. 1275.) Thus, a determination of whether Rady's Chargemaster represents the reasonable value of Rady's services would require the trial court to consider evidence relating to thousands of different services, and each class member will have received a billing comprised of different services and therefore different Chargemaster entries, some of which may represent the reasonable value of Rady's services, and some of which may not. Accordingly, the question of whether the Chargemaster represents the reasonable value of Rady's services does not present a common question suitable for determination on a class-wide basis.

In numerous other cases in which plaintiffs have sought to certify a class to challenge the reasonableness of Chargemaster rates charged by the defendant, courts have recognized that the reasonableness of the Chargemaster rates is an issue that will require individual determination on a case-by-case basis rather than presenting a common question suitable for class determination. (*Hale*, *supra*, 232 Cal.App.4th at pp. 61-67 [common issues did not predominate in a class action lawsuit seeking damages for allegedly unreasonable Chargemaster rates when the reasonable value of the hospital's services could not be calculated on a class-wide basis]; *Kendall, supra*, 16 Cal.App.5th at p. 573 [common issues did not predominate as to suit seeking damages based on practice of billing at Chargemaster rates because "[a]ny reasonable value determinations concerning the services provided to . . . putative class members must involve

36

considerations . . . of the individual variations among the patients' treatment" and "the effect of regulatory schemes"]; *Eufaula Hosp. Corp. v. Lawrence* (Ala. 2009) 32 S.3d 30, 46 [class certification in a case challenging Chargemaster rates was properly denied because "calculating a reasonable charge for the medical services provided . . . involves heavily individualized determinations for each class member"]; *Maldonado v. Ochsner Clinic Foundation* (5th Cir. 2007) 493 F.3d 521, 524-525 [class certification was properly denied in a lawsuit challenging Chargemaster rates because "the reasonableness of medical fees depends on multiple factors" and "the amount patients were charged and the amount that is 'reasonable' for the services they received is necessarily an individual inquiry"]; *Colomar v. Mercy Hospital, Inc.* (S.D.Fla. 2007) 242 F.R.D. 671, 676 (*Colomar*) [plaintiff failed to identify common question in a class action lawsuit challenging Chargemaster rates because "all the facts going to the reasonableness of the [hospital's] charges will differ between the potential class [members] based on the type of services rendered and the time period in which they were received"].)  We reach the same conclusion here.  By seeking the specific type of declaratory relief identified in the complaint, Hefczyc has created a situation in which the trial court will be required to decide the reasonableness of Rady's Chargemaster rates, which is a highly individualized and fact-intensive inquiry.  Therefore, this action is not one in which common issues predominate.

Hefczyc relies on cases holding that interpretation of a form contract entered into by each of the class members is an appropriate subject for class treatment because the meaning of the form contract is a common issue that predominates in the action.  (See

*Kleiner v. First National Bank of Atlanta* (N.D.Ga. 1983) 97 F.R.D. 683, 692 ["claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such"]; *In re Checking Account Overdraft Litigation* (S.D.Fla. 2012) 286 F.R.D. 645, 657, fn. omitted ["[s]ince the reasonable expectations of a party to a standardized form contract are judged objectively, the entire class will win or lose on their contract claims based upon the same evidence and legal standards of contract construction"]; but see *Thompson, supra*, 217 Cal.App.4th at p. 732 ["the mere existence of a form contract is insufficient to determine that common issues predominate when the questions of breach and damage are essentially individual"].)  However, as we have discussed, because of the specific nature of the declaratory relief that Hefczyc seeks, resolving this case would require the trial court to do far more than simply interpret the COTA.  On the contrary, to issue a declaration that Rady is not permitted to bill based on its Chargemaster rates and that its billing practices are unconscionable, the trial court would be required to decide whether each and every item on Rady's Chargemaster represents the reasonable value of Rady's services provided to individual patients in any given year.  That determination does not present a common issue amenable to a simple class-wide declaration.  (See *Colomar, supra*, 242 F.R.D. at p. 683 [in denying class certification in a case challenging Chargemaster rates, the court stated that "[i]t does not help Plaintiff that [the hospital] uniformly used a standardized contract with an open pricing term because the all-important details going to the reasonableness of the charges are anything but standardized

38

or uniform"].)  Accordingly, the trial court was well within its discretion to conclude that Hefczyc failed to establish that common issues predominate.

3.      *Superiority*

"[T]he proponent of class certification bears the burden of establishing that a class action will be a superior means of resolving the dispute. . . .  In determining the superiority of class treatment, the trial court must weigh the respective benefits and burdens of class litigation."  (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 156, citations omitted.)  "A class action should be certified only if it will provide substantial benefits both to the courts and the litigants."  (*Washington Mutual, supra*, 24 Cal.4th at p. 914.)

As we have explained, to issue the declaratory relief sought by Hefczyc, the trial court will necessarily have to decide whether each of the Chargemaster rates appearing on each of the bills received by the class members represented the reasonable value of Rady's services.  That determination is not suitable for class-wide treatment because it would require the court to examine extensive evidence on the thousands of different services appearing on the Chargemaster and the different services rendered to individual patients.  It would be much more manageable for the courts and litigants if each person who wishes to challenge the reasonableness of a bill based on Rady's Chargemaster rates brings an individual proceeding, where the evidence can be manageably limited to the specific services at issue.  Accordingly, the trial court was within its discretion to conclude that class treatment was not a superior method for resolving the issue presented in the complaint.

39

D.      *The Trial Court Properly Denied Issue Certification*

In his motion for class certification, Hefczyc requested, in the alternative, that the trial court certify a single class issue pursuant to California Rules of Court, rule 3.765(b). Hefczyc sought certification of the following issue:  "whether [the COTA] allows [Rady] to charge self-pay patients its Chargemaster rates, or whether [the COTA] contains an 'open' price term which limits [Rady] to charging no more than the reasonable value of the services provided."  Hefczyc contends that the trial court erred in denying certification on this single issue.

The single issue that Hefczyc identifies is substantially similar to the first item of declaratory relief set forth in the complaint, which seeks a declaration that "[Rady's COTA] contains an 'open price' term, and does not permit [Rady] to bill and demand payment from self-pay emergency care patients based upon its Chargemaster rates."  In one instance Hefczyc is seeking a declaration that the COTA "does not permit" Rady to bill at Chargemaster rates; in the other instance, Hefczyc is seeking a declaration as to whether, the COTA "allows" Rady to bill at Chargemaster rates.  However, the substance of the declaratory relief sought in both instances is the same.

We have thoroughly discussed why this type of declaratory relief is not appropriate for class certification.  Specifically, to issue a declaration that the COTA either "does not permit" or does not "allow" Rady to bill at Chargemaster rates, the trial court would be required to determine whether the Chargemaster represents the reasonable value of Rady's services.  That inquiry presents individualized and complicated issues unique to each class member, each of whom received different bills based on different

40

services.  Accordingly, the single issue that Hefczyc has identified is not appropriate for class certification.  Moreover, even if Hefczyc had identified an issue appropriate for class treatment, he still has not established the existence of an ascertainable class.

## DISPOSITION

The order denying class certification is affirmed.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.