Filed 11/12/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TONY SARUN et al., | B288062 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC483764) |
| v. | |
| DIGNITY HEALTH, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maren E. Nelson, Judge. Reversed and remanded with directions.

Law Offices of Barry Kramer, Barry L. Kramer; Carpenter Law and Gretchen Carpenter for Plaintiffs and Appellants.

Ogloza Fortney, Darius Ogloza and David Fortney for Defendant and Respondent.

_____

Tony Sarun had no health insurance in March 2012 when he received emergency care at Northridge Hospital Medical Center, then owned and operated by Dignity Health.[1] Upon admission Sarun signed an agreement to pay the hospital's "full charges, unless other discounts apply." "Full charges" were defined as "the Hospital's published rates (called the chargemaster), prior to any discounts or reductions." The admissions contract explained uninsured patients might qualify for government aid programs or financial assistance from Dignity Health.

After receiving an invoice for $23,487.90, which reflected a chargemaster rate of $31,359 and a $7,871.10 "uninsured discount," and without applying for any other discount or financial assistance, Sarun filed this putative class action lawsuit. In his third amended complaint, filed in May 2015, Sarun asserts claims for unfair and/or deceptive business practices under Business and Professions Code section 17200 (UCL) and violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.) and seeks declarations that Dignity Health's billing practices as they relate to uninsured individuals who received emergency care at a Dignity Health hospital in California are "unfair, unconscionable and/or unreasonable" and that, because the prices to be charged are not

---

[1] On February 1, 2019 Dignity Health merged with Catholic Health Initiatives and adopted the name CommonSpirit Health. With this reorganization ownership of Northridge Hospital Medical Center and several other Dignity Health community hospitals was transferred to Dignity Community Care, a Colorado not-for-profit corporation. Dignity Community Care's sole member is CommonSpirit Health.

adequately disclosed or readily available to those individuals, its admissions contract contains an "open price" term within the meaning of Civil Code section 1611,[2] so that self-pay patients[3] are liable only for the reasonable value of the services or treatment provided.

In June 2017 Sarun moved for class certification of his cause of action for declaratory relief, now defining the proposed class as individuals who had received treatment at Northridge Hospital Medical Center during the proposed class period and who were directly billed for such treatment at chargemaster rates or chargemaster rates less an uninsured discount. In December 2017 the trial court denied Sarun's motion, finding the class was not ascertainable; common issues of fact did not predominate because it would be necessary to determine whether thousands of individual chargemaster rates were reasonable or unconscionable to provide meaningful relief; and, for the same reason, a class action was neither manageable nor a superior method for resolving the litigation. The court's order did not address Sarun's

[2]     Civil Code section 1611 provides, "When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth."

[3]     "'Self-pay patient' means a patient who does not have third-party coverage from a health insurer, health care service plan, Medicare, or Medicaid, and whose injury is not a compensable injury for purposes of workers' compensation, automobile insurance, or other insurance . . . . Self-pay patients may include charity care patients." (Health & Saf. Code, § 127400, subd. (f).)

3

alternate request for certification of an issue class, limited to the question whether Dignity Health's admissions contract included an "open price" term.

We exercise our inherent authority to modify the class definition, combining elements of the definition in Sarun's third amended complaint and his motion for class certification and limiting it to uninsured individuals who, during the relevant time period, received emergency care at Northridge Hospital Medical Center and who signed (personally or through an authorized agent) the admissions contract and were thereafter directly billed for that treatment at chargemaster rates or chargemaster rates less the uninsured discount. As to that redefined class, we reverse in part the trial court's order denying class certification and direct it to certify as a class issue whether Dignity Health's admissions contract contains an open price term, so that patients within the class are obligated to pay no more than the reasonable value of the services provided.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Sarun's Emergency Room Treatment and the Admissions Contract*

According to the allegations of the third amended complaint, Sarun was taken by ambulance to the emergency room at Northridge Hospital Medical Center following a motor vehicle accident. He was released three to four hours later after being examined and receiving various diagnostic tests.

While at the hospital Sarun signed a standard form "Conditions of Admissions and Treatment," which included terms governing payment for services. Paragraph 8(b) of the admissions contract stated, "Patients who do not have insurance must pay us for the services at our full charges, unless other

4

discounts apply. However, uninsured patients may be able to qualify for government programs or financial assistance. Financial assistance may include a discount from the Hospital's full charges, free care, interest free payment plans or other assistance. Patients seeking government or financial assistance must complete an application." The term "full charges" was defined at the beginning of the agreement as "the Hospital's published rates (called the chargemaster), prior to any discounts or reductions." Paragraph 9, "Financial Assistance," explained the hospital could help uninsured patients enroll in government health care programs, and, if the patient did not qualify, might provide financial assistance under its own financial assistance policy.

Sometime following his treatment, Sarun received a "Balance Due Notice," reflecting total charges of $31,359, the chargemaster rate; an uninsured discount of $7,871.10; and a balance due of $23,487.90. The invoice stated, in addition to the uninsured discount, "you may be eligible for other forms of financial assistance such as government sponsored programs" and provided a telephone number for further information. A document included with the invoice described the financial assistance options, provided an application and enumerated the necessary documentation. (See *Sarun v. Dignity Health* (2014) 232 Cal.App.4th 1159, 1163.)[4] Sarun did not seek any further discount or apply for financial assistance. (*Ibid*.) However, a second invoice was sent to Sarun, showing that a "prompt pay"

---

[4] In *Sarun v. Dignity Health*, *supra*, 232 Cal.App.4th 1159 we held Sarun had standing under the UCL to challenge Dignity Health's billing practices for uninsured emergency care patients.

discount would reduce the balance due to $15,648.15 if he paid the total within 30 days.[5]

2. *The Chargemaster List of Billable Medical Goods and Services*

Northridge Hospital Medical Center, like hospitals across the country, uses a charge description master or "chargemaster," which is a list of all the billable medical goods or services provided by the hospital. (See Health & Saf. Code, § 1339.51, subd. (b)(1) ["'[c]harge description master' means a uniform schedule of charges represented by the hospital as its gross billed charge for a given service or item, regardless of payer type"].) As explained by Dignity Health, a chargemaster is a list, "generally contained in a spreadsheet, of every single patient-billable item or service available at a particular hospital. . . . The Chargemaster identifies each of these items and contains charge descriptions, billing codes, prices, and other information necessary for patient care and billing." Each of Dignity Health's hospitals had its own chargemaster; each hospital set its own prices for items and services on its chargemaster list; and "[p]rices and markups over 'cost,' vary widely not only by hospital but also by item or service. . . . Prices for procedures will vary with a number of factors, including staff resources, equipment resources, costs incurred related to the procedure and time elements." Indeed, as the Supreme Court observed, "Chargemaster prices for a given service can vary tremendously,

---

[5] Additional invoices sent to Sarun further reduced the balance due to just over $4,000 based on Dignity Health's patient payment assistance policy and financial information Sarun provided in his deposition testimony.

6

sometimes by a factor of five or more, from hospital to hospital in California." (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 561 (*Howell*).)

A hospital is not prohibited from using its chargemaster for billing purposes (see Health & Saf. Code, § 127444) and is authorized to negotiate and charge alternative rates (see Bus. & Prof. Code, § 16770, subd. (f)). As Dignity Health acknowledges, contracts between hospitals and commercial insurance companies include a variety of negotiated price terms for different services and supplies, including percentage discounts from chargemaster rates, flat fees for certain services, per diem rates, "not to exceed" pricing and special payment terms for specific services such as trauma or burn care.

A hospital's chargemaster must be posted on its website or made available at the hospital's physical location (Health & Saf. Code, § 1339.51, subd. (a)(1)) and must be filed with California's Office of Statewide Health Planning and Development (see Health & Saf. Code, § 1339.55), which makes chargemasters available to the public on its website.

3. *Sarun's Third Amended Complaint*

Sarun's third amended complaint alleges causes of action under the UCL and the CLRA and for declaratory relief under Code of Civil Procedure section 1060.[6] Addressing uninsured emergency care patients at Dignity Health generally and the 32 acute-care hospitals it owned or operated throughout California, not at just Northridge Hospital Medical Center, Sarun alleged Dignity Health used the same adhesive admissions

---

[6] Statutory references are to this code unless otherwise stated.

7

contract at all its hospitals and required all emergency care patients or their agents to sign it. Sarun further alleged the admissions contract contains "no fixed or definite pricing terms" because the phrase "full charges, unless other discounts apply" is inadequately explained and cannot be made certain. Accordingly, the admissions contract has an open price term, obligating patients to pay only the reasonable value of the care received. Alternatively, Sarun alleges Dignity Health's chargemaster prices are several times greater than the reasonable value of the services provided, as well as the reimbursement amounts received from other categories of patients, and bear no relation to the hospital's actual costs for providing treatment or services. As a result, the chargemaster prices, if billed to an uninsured emergency care patient, are unconscionable.

Sarun alleged he was bringing his action pursuant to Code of Civil Procedure section 382 and Civil Code section 1781 on behalf of himself and a class of all other persons similarly situated, defined as, "All individuals (or their guardians or representatives) who, on or after May 3, 2008, (a) received emergency care medical treatment at a Dignity hospital in California; (b) were not covered by commercial insurance or governmental healthcare programs at the time of treatment; and (c) were not given a payment assistance discount under Dignity's Payment Assistance Policy."[7] He further alleged Dignity Health had acted or refused to act on grounds generally applicable to all

---

[7]     Sarun excluded from the class definition "Defendant and Defendant's hospitals, any officers or directors thereof, together with the legal representatives, heirs, successors, or assigns of any of Defendant's hospitals, and any judicial officer assigned to this matter and his or her immediate family."

8

members of the class, making final injunctive or declaratory relief appropriate for the class as a whole.

For his UCL cause of action, Sarun alleged Dignity Health's conduct was both unfair and deceptive because the prices charged "were unduly excessive, were not disclosed or readily available to Dignity's patients, and the parties had unequal bargaining powers that led Sarun and the Class members to enter into their Contracts without knowledge of their terms." Sarun also alleged Dignity Health's practices toward its uninsured emergency care patients were deceptive because it failed to disclose that those patients would be required to pay approximately three times more than other patients signing the same admissions contract and receiving the same treatment and services.

For his CLRA cause of action, Sarun alleged Dignity Health misrepresented the characteristics, uses and benefits of the services it provided (including by representing it provides "affordable" care at the "lowest possible cost") and advertised its services with an intent not to sell them as advertised.

Sarun's third cause of action for declaratory relief sought a declaration that Dignity Health's billing practices as they relate to class members are "unfair, unconscionable, and/or unreasonable." He also sought a declaration that Dignity Health's admissions contract "contains an 'open price' term with respect to self-pay emergency care patients and thus [they] are liable to [Dignity Health] for no more than the reasonable value of the treatment/services provided."

9

4. *Sarun's Motion for Class Certification; Dignity Health's Opposition*

On June 26, 2017 Sarun moved for certification of a class for purposes of his cause of action for declaratory relief, redefining the proposed class as "all individuals who, from March 1, 2011 to the date of class certification, received treatment at Northridge Hospital Medical Center and who were directly billed for such treatment at Chargemaster rates or Chargemaster rates less an 'uninsured discount,' on one or more occasions. (For purposes of this action, patients who were 'directly billed' means the patient or, where applicable, the patient's legal guardian.)"[8] As in his third amended complaint, Sarun described two primary theories of liability on behalf of his putative class. First, the admissions contract contains an open price term: It does not adequately incorporate the chargemaster and its rates; and, even if it did, the price for services is not readily ascertainable because the various potential discounts that may be applied to reduce the actual bill received by patients are not reflected on the face of the chargemaster or otherwise disclosed in the admissions contract. Second, the chargemaster rates, even after the uninsured discount, are unconscionable. Under either theory, Sarun contended, class members are liable only for the reasonable value of the services they received. In the alternative, pursuant to California Rules of Court, rule 3.765(b) (rule 3.765(b)),[9] Sarun requested certification of the class limited to the issue whether the admissions contract contains an open price term.

---

[8]     The proposed class definition again excluded "any officers or directors of Defendant, together with the legal representatives,

10

In his motion Sarun argued the class was numerous, citing evidence that, between April 1, 2011 and March 31, 2017, there were more than 38,000 emergency room visits at Northridge Hospital Medical Center by self-pay patients, although Sarun acknowledged that not all those patients were necessarily directly billed at chargemaster rates or chargemaster rates less the uninsured discount. Sarun next contended the element of commonality was satisfied since all class members were subject to the same language in their admissions contract. He then presented evidence that his claims were typical of the claims of the class and that he and his counsel would adequately protect the class.

Relying on standards applied by federal courts when evaluating proposed class actions under rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure (28 U.S.C.), Sarun argued ascertainability of the proposed class, the predominance of common questions of fact or law and the superiority of the class action device, all generally required for certification of a class action under state law, were not necessary for the type of class-wide declaratory relief he was seeking. Nonetheless, while maintaining it was not required, Sarun asserted the proposed class was ascertainable because it described a set of common characteristics that were sufficient to allow a member of the class to identify himself or herself as having a right to recover based on

---

heirs, successors, or assigns of Defendant, and any judicial officer assigned to this matter and his or her immediate family."

9    Rule 3.765(b) provides, "When appropriate, an action may be maintained as a class action limited to particular issues. A class may be divided into subclasses."

11

the class definition; he specifically argued the administrative feasibility of individually identifying class members should not be part of the ascertainability determination.  Similarly, although not required, Sarun contended common issues predominated over individual issues because Dignity Health used a standard form, adhesive contract, and "only a contract interpretation by the Court is sought herein."  And, while insisting he did not need to demonstrate a class action was the superior means to pursue this litigation, Sarun argued a class action was needed for a fair and efficient adjudication of the issues presented.

In its opposition Dignity Health argued, except for numerosity, Sarun's putative class failed to meet any of the requirements for a California class action.  In particular, Dignity Health emphasized the ascertainability element of the class certification analysis, submitting evidence concerning its records systems and billing practices to support its argument that a manual review of each individual patient account would be necessary to determine who was included within the proposed class.  Dignity Health also submitted an expert declaration explaining that no uniform determinations could be made regarding the reasonableness (or unconscionability) of chargemaster rates; any such analysis would be intensely fact-specific and not amenable to common proof.  Thus, Dignity Health insisted, individual issues overwhelmed the few common issues identified by Sarun.  The opposition papers did not address Sarun's alternate request for a limited issue class.

5. *The Trial Court's Order Denying Class Certification*

Following a hearing on December 7, 2017 the trial court entered its order denying class certification.  The court rejected Sarun's argument the certification issue should be evaluated

under standards governing federal class actions and ruled, although the requirement of numerosity had been met, the proposed class was not ascertainable, individual issues predominated over common issues and a class action was neither manageable nor the superior method for litigating the dispute.

Focusing initially on the question of ascertainability, the court summarized at length information provided by Dignity Health's director of revenue cycle management concerning collection and maintenance of patient information. The court found ascertainment of members of the class as defined would require manual review of data, which "would be extremely expensive and time consuming." Accordingly, the court concluded the proposed class definition "'runs afoul of the requirement that class members be "readily identified without unreasonable expense or time by reference to official records,'" citing *Thompson v. Automobile Club of Southern California* (2013) 217 Cal.App.4th 719, 728, a case that has subsequently been disapproved in part in *Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 986, fn. 15 (*Noel*) [disapproving the standard quoted by the superior court from *Thompson* "insofar as it could be perceived as exclusive"; "this is one way but not the only way to show an ascertainable class"].)

With respect to predominance of common or separate issues, the court rejected Sarun's disclaimer of any need to determine the reasonable value of the various services and procedures on the chargemaster in connection with the request for declaratory relief.[10] To declare Dignity Health could not

_____

[10]    Sarun insisted his request for declaratory relief only required a determination that the admissions contract contained an open price term and that, as a result, Dignity Health could

13

utilize the chargemaster rates, the court reasoned, would necessarily require it to determine whether those rates represented the reasonable value of the services at issue: "As such, the reasonableness of thousands of chargemaster rates must be considered at trial." Moreover, the court observed that without a determination of what reasonable value is and whether chargemaster rates less the uninsured discount exceeded that reasonable value, "this case would have only limited utility as future litigation as to the amount owed would still be necessary, in contravention of one of the fundamental purposes of declaratory relief." Sarun's alternate theory, that the chargemaster rates or chargemaster rates less uninsured discount are unconscionable, the court continued, has the same problem of individual issues overwhelming any common questions presented.

The need to decide whether individual items on the chargemaster were appropriately priced and whether the charges for particular patients were unconscionable in order to resolve the ultimate issue of Dignity Health's liability, the court further found, demonstrated that a class action was neither manageable nor the superior method for handling the litigation.

In a final section of its order, the trial court observed that Sarun's claims may be not be typical of the class and he may not

only recover the reasonable value of the services and treatment provided. According to Sarun, Dignity Health would have to establish the reasonable value of particular services and treatments, not in this lawsuit, but in separate litigation against each class member for whom it sought to collect unpaid invoices.

14

be an adequate class representative.[11]  However, the court declined to deny class certification on that basis:  "Having already determined that ascertainability, commonality, and manageability/superiority have not been shown, there is no need to decide adequacy or typicality at this junction."[12]

Sarun filed a timely notice of appeal.  (See *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 762 ["an order that denies class certification or otherwise extinguishes class claims in their entirety is appealable, but only in cases in which individual claims survived"]; *Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 8.)

---

[11]  Dignity Health argued in its opposition papers, because Sarun had refused to communicate with it regarding his bill and actively avoided seeking financial assistance, his claims were not typical (if, indeed, there were any "typical" claims within the proposed class).  It also asserted, because Sarun had received substantial discounts and financial assistance from Dignity Health, he was not even a member of the class and not an adequate representative for it.

[12]  In its tentative ruling, which is substantially similar to its final order denying class certification, the court had stated, "For all the reasons already articulated, Sarun's request for certification in the alternative pursuant to Cal. Rule of Court, Rule 3.765(b) is denied."  The final order, however, contains no reference to Sarun's request for a rule 3.765(b) limited issue class.  (Cf. *Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 300 ["the court's final order supersedes the tentative ruling"].)

15

## DISCUSSION

### 1. *Governing Law and Standard of Review*

Class actions are statutorily authorized "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (§ 382.) The party seeking class certification must establish (1) "the existence of an ascertainable and sufficiently numerous class"; (2) "a well-defined community of interest"; and (3) "substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*); accord, *Noel*, *supra*, 7 Cal.5th at p. 968.) "The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.'" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435; accord, *Noel*, at p. 968; *Brinker*, at p. 1021.)[13]

"The certification question is 'essentially a procedural one'" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*)) that examines "whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment" (*id.* at

---

[13] The CLRA includes its own set of requirements for class certification under Civil Code section 1781. (See *Noel*, *supra*, 7 Cal.5th at p. 969.) Because Sarun sought class certification only for his declaratory relief cause of action, any differences between the requirements for class certification under Code of Civil Procedure section 382 and Civil Code section 1781 are not pertinent to this appeal.

16

p. 327). A certification motion "'does not ask whether an action is legally or factually meritorious' [citation]," but rather whether the common issues it presents "'are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.'" (*Id.* at p. 326.) The court must assume the class claims have merit and resolve disputes regarding the claims' merits only when necessary to determine whether an element for class certification is satisfied. (*Brinker, supra,* 53 Cal.4th at pp. 1023-1025.) "'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.'" (*Id.* at pp. 1021-1022; see *Sav-On*, at p. 334 ["'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate'"].)

A trial court is generally afforded great latitude in granting or denying class certification, and we normally review a ruling on certification for an abuse of discretion. (*Sav-On, supra,* 34 Cal.4th at pp. 326-327; see *Brinker, supra,* 53 Cal.4th at p. 1022 ["'[b]ecause trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification'"].) This deferential standard of review, however, is inapplicable if the trial court has evaluated class certification using improper criteria or an incorrect legal analysis: "[A] trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made.'" (*Sav-On*, at pp. 326-327; accord, *Noel, supra,* 7 Cal.5th at p. 968; *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089.) In

17

conducting our review, we consider only the grounds articulated by the trial court for its certification decision: "We review the trial court's actual reasons for granting or denying certification; if they are erroneous, we must reverse, whether or not other reasons not relied upon might have supported the ruling." (*Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 530; accord, *Franchise Tax Bd. Limited Liability Corp. Tax Refund Cases* (2018) 25 Cal.App.5th 369, 388; *Alberts v. Aurora Behavioral Health Care* (2015) 241 Cal.App.4th 388, 399.)

2. *The Trial Court Used an Unduly Restrictive Standard To Evaluate the Proposed Class's Ascertainability*

As discussed, after summarizing portions of the declaration submitted by Dignity Health's director of revenue cycle management concerning the manner in which a patient's billing and insurance information may change over time, the trial court observed, "While the class definition appears straightforward on its face (either a person received treatment at Northridge Hospital and was billed at chargemaster rates, or chargemaster rates with uninsured discounts, or not), the actual determination of persons who were billed at such rates is not clearly or easily determined." To the contrary, the court determined, "[t]here does not appear to be any way to ascertain who is actually in the class without manual review of [the] data." Because class members could not be "'readily identified without unreasonable expense or time by reference to official records,'" the court concluded, Sarun had failed to establish the class can be ascertained, obligating the court to deny class certification. The trial court justified its use of this restrictive ascertainability standard by explaining, "The primary purpose of the ascertainability requirement is to provide

18

notice to all potential class members as to whom the judgment in the action will be res judicata."

Shortly after the trial court's decision denying class certification, the Supreme Court in *Noel, supra*, 7 Cal.5th 955 disapproved the stringent approach to ascertainability utilized by the trial court here and articulated in numerous court of appeal decisions "insofar as it could be perceived as exclusive." (*Id.* at p. 986, fn. 15.)[14] Instead, the Court held the threshold requirement of ascertainability for class certification is satisfied when the class "is defined 'in terms of objective characteristics and common transactional facts' that make 'the ultimate identification of class members possible when that identification becomes necessary.' [Citation.] We regard this standard as including class definitions that are 'sufficient to allow a member of [the class] to identify himself or herself as having a right to recover based on the [class] description.'" (*Id.* at p. 980.)

With respect to the concerns for the feasibility of personal notice underlying use of a more restrictive standard, the *Noel* Court held, "[D]ue process does not invariably require that personal notice be directed to all members of a class for a class action to proceed, or for that matter that an individual member of a certified class must receive notice to be bound by a judgment. [Citations.] It follows that a construction of the ascertainability requirement that presumes such notice *is* necessary to satisfy due

---

[14] The Court noted a number of court of appeal decisions applying this standard, including several from this division, had determined the identity of the class was ascertainable, "a conclusion that did not necessarily rule out other avenues for showing an ascertainable class." (*Noel, supra*, 7 Cal.5th at p. 974, fn. 8.)

process, and demands that the plaintiff show how it can be accomplished, threatens to demand too much, too soon.  It is likewise mistaken to take a categorical view that the relevant due process interests can be satisfied only when 'official records' [citation] supply the means of identifying class members, and for a similar reason:  due process is not that inflexible." (*Noel, supra,* 7 Cal.5th at p. 984.)  The Court further explained, "Our jurisprudence addressing class certification has stressed the importance of a careful weighing of both the benefits and the burdens that may be associated with a proposed class action. [Citation.]  A conception of ascertainability as concerned with whether class members can be identified without an unreasonable commitment of expense or time is at cross purposes with this direction." (*Id.* at p. 985.)

It follows from the Supreme Court's holding and analysis in *Noel* that the trial court erred when it found no ascertainable class existed.[15]  As the trial court observed, the class definition is straightforward on its face:  It is defined in objective terms— patients who received treatment at Northridge Hospital Medical Center and were billed for such treatment at chargemaster rates

---

[15]     We reject any suggestion the ascertainability requirement, as most recently articulated in *Noel, supra,* 7 Cal.5th 955, does not apply to California class actions that are the equivalent of a class action under rule 23(b)(1) or (b)(2) of the Federal Rules of Civil Procedure (28 U.S.C.).  (See *Hefczyc v. Rady Children's Hospital-San Diego* (2017) 17 Cal.App.5th 518, 535 ["there is no gap in California precedent to be filled by reference to Federal Rules of Civil Procedure, rule 23(b)(1)(A) or (2) (28 U.S.C.) on the issue of what class certification standards must be met when a plaintiff seeks only declaratory or injunctive relief on behalf of a class"], disapproved on other grounds in *Noel,* at p. 986, fn. 15.)

or chargemaster rates less an uninsured discount—that are, in the language of *Noel*, "'"sufficient to allow a member of [the class] to identify himself [or herself] as having a right to recover based on the [class] description."'" (*Noel*, *supra*, 7 Cal.5th at p. 980.)[16] "To the extent that the trial court had concerns regarding the state of the record as it pertained to matters such as the provision of notice to class members or how burdensome it would be to identify class members, those issues should not have been resolved in the context of ascertainability." (*Id.* at p. 987; cf. *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 915.)

> 3. *The Trial Court Misperceived Sarun's Primary Theory of Liability in Evaluating Whether Common Issues of Law or Fact Predominate*

Although the trial court acknowledged its responsibility to assess whether common issues predominate by considering the method by which the putative class representative seeks to impose liability, it incorrectly defined Sarun's principal claim for declaratory relief and thereby erred in its analysis of the common

---

[16]   In articulating the correct standard for determining ascertainability, the Supreme Court disapproved of the analysis in *Hefczyc v. Rady Children's Hospital–San Diego*, *supra*, 17 Cal.App.5th 518, *Kendall v. Scripps Health* (2017) 16 Cal.App.5th 553 and *Hale v. Sharp Healthcare* (2014) 232 Cal.App.4th 50, cases relied upon by the trial court and by Dignity Health on appeal that denied class certification in lawsuits challenging the use of chargemaster rates for uninsured patients. (*Noel*, *supra*, 7 Cal.5th at p. 986, fn. 15.) In each of those cases the lack-of-ascertainability finding was a significant factor in the court's related findings that individual issues predominated.

21

issue question. According to the trial court, Sarun was seeking a declaration (1) that Dignity Health's standard form admissions contract contained an open price term, permitting it to directly bill patients only for the reasonable value of the treatment or services provided; and (2) that the chargemaster rates actually used at Northridge Hospital Medical Center (or the chargemaster rates less an uninsured discount) are unreasonable. Because trying that issue would require consideration of the reasonableness of thousands of individual chargemaster rates, the court reasoned, those individual issues overwhelmed the common contract interpretation issue presented.

As Sarun repeatedly emphasized, however, as to this theory of liability, which also is the basis for his alternate request for certification of a limited issue class under rule 3.765(b), he seeks only a declaration that Dignity Health's admissions contract included an open price term and that Northridge Hospital Medical Center may only directly bill patients the reasonable value of the treatment received or services provided. If Sarun's contract interpretation theory is correct, whether a particular chargemaster rate, or chargemaster rate less uninsured discount, in fact, represents the reasonable value of the treatment or service provided would be determined, if at all, in separate litigation between Dignity Health and directly billed patients from whom it seeks to collect unpaid invoices. Since it appears to be undisputed on this record that patients are all required to sign an identical form admissions contract at Northridge Hospital Medical Center, Sarun's theory of liability included no individual issues.

In contrast, the second prong of Sarun's request for declaratory relief—a declaration the chargemaster rates or

chargemaster rates less the uninsured discount are unconscionable—would, as the trial court found, necessarily require a determination whether those rates represent the reasonable value of the hospital's services. (See *Hefczyc v. Rady Children's Hospital–San Diego* (2017) 17 Cal.App.5th 518, 544 ["[t]o issue a declaration that Rady is not permitted to bill based on its Chargemaster rates and that its billing practices are unconscionable, the trial court would be required to decide whether each and every item on Rady's Chargemaster represents the reasonable value of Rady's services provided to individual patients in any given year. That determination does not present a common issue amenable to a simple class-wide declaration"], disapproved on another ground in *Noel*, *supra*, 7 Cal.5th at p. 986, fn. 15.)

Sarun disputes this reasoning, insisting he intends to prove any use of chargemaster rates by Dignity Health is unconscionable based on statistical evidence that will involve an overall comparison of chargemaster rates to the aggregate cost to Dignity Health of providing treatment and services and the average reimbursements received by Dignity Health from all types of payors. Sarun's argument fundamentally misapprehends the nature of an unconscionability finding. As the Supreme Court has explained, when a price term is alleged to be substantively unconscionable, "it is not sufficient for a court to consider only whether 'the price exceeds cost or fair value.'" (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 983.) Rather, the evaluation of substantive unconscionability "is highly dependent on context. [Citation.] The doctrine often requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision." (*Sanchez v. Valencia Holding Co.,*

23

*LLC* (2015) 61 Cal.4th 899, 911.) "'[A] contract can provide a "margin of safety" that provides a party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable.'" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 117.)

In addition, "unconscionability requires oppression or surprise—that is, procedural unconscionability—along with the overly harsh or one-sided results that epitomize substantive unconscionability. . . . Even where a party complains of a single contract clause, the court usually must still examine the bargaining process for any procedural unfairness." (*De La Torre v. CashCall, Inc.*, *supra*, 5 Cal.5th at p. 982.) Accordingly, determining whether billing with chargemaster rates is unconscionable will require not only an evaluation of specific charges within the overall context of Dignity Health's economic and commercial situation but also an analysis of individual factors relating to a particular patient—for example, was he or she conscious or unconscious upon arrival at the hospital; was he or she a returning patient who was familiar with Dignity Health's billing process; was he or she indigent or insured but subject to policy exclusion? As to all of these questions, individual issues necessarily predominate.

In sum, the trial court's decision that common issues do not predominate with respect to Sarun's request for certification of a class to pursue his cause of action for declaratory relief in its entirety is supported by substantial evidence. (Cf. *Howell*, *supra*, 52 Cal.4th at p. 561 ["[w]e do not suggest hospital bills [based on chargemaster rates] always exceed the reasonable value of the services provided"].) However, its implicit finding with respect to

24

the limited issue class that the common issue of contract interpretation raised by Sarun is outweighed by individual questions of fact is not. (See *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 877 ["[c]ontroversies involving widely used contracts of adhesion present ideal cases for class adjudication; the contracts are uniform; the same principles of interpretation apply to each contract, and all members of the class will share a common interest in the interpretation of an agreement to which each is a party"].) As discussed, there are no individual issues raised by this limited request for declaratory relief.

4. *Substantial Evidence Supports the Trial Court's Finding the Class Definition As Proposed in the Certification Motion May Not Be Manageable, but a More Limited Class Is Properly Certified*

The trial court predicated its finding that Sarun had not demonstrated the manageability of the individual issues raised by his proposed class action or that a class action was a superior method for resolving the litigation on its misconception of Sarun's primary theory of liability. To determine whether the admissions contract should be set aside, the court explained, it would be required to determine not only whether it contains an open price term but also, if it does, what the reasonable charges are for the treatment received by each uninsured patient and, if it does not, whether the chargemaster rates (or chargemaster rates less the uninsured discount) as billed are unconscionable. As discussed, however, certifying a rule 3.765(b) limited issue class creates neither difficulty for the trial court.

Moreover, although the trial court correctly observed that answering the open-price-term question would not fully resolve class members' ultimate liability to Dignity Health, it erred in

25

suggesting there was no utility in deciding this threshold issue. To the contrary, settling this issue could significantly expedite final determination of any outstanding billing disputes. (See *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647 [""""[t]he purpose of a declaratory judgment is to 'serve some practical end in quieting or stabilizing an uncertain or disputed jural relation""""].) If Sarun's interpretation of the admissions contract is upheld, Dignity Health could not assert that uninsured patients are contractually bound to pay chargemaster rates less discounts without regard to whether those rates are reasonable.[17] If it is rejected, as to all class members bound by the judgment Dignity Health need only defend the rates charged against the claim they are unconscionable, a quite different issue with a different party bearing the burden of proof. (Cf. *Sanchez v. Valencia Holding Co., LLC, supra*, 61 Cal.4th at p. 911 ["[b]ecause unconscionability is a contract defense, the party asserting the defense bears the burden of proof"].) In addition, requiring class members to individually pursue the contract interpretation question, aside from its potential economic infeasibility, would create an unacceptable risk of inconsistent outcomes.

Nonetheless, based on the evidence presented by Dignity Health's director of revenue cycle management, the trial court, in

---

[17] We need not decide whether an open-price-term finding would shift to Dignity Health the burden of proving reasonableness in a contested collection action, as Sarun argues, or if the burden would remain with the patient to prove the charged amounts were unreasonable, as Dignity Health contends. In either case, resolving the open-price-term question will, as a practical matter, significantly advance any such litigation.

26

evaluating the manageability of the proposed class proceeding, appropriately considered the difficulty and expense of identifying absent class members and providing them with notice at an appropriate time, if required. (See *Noel*, *supra*, 7 Cal.5th at p. 986.) This manageability problem, the trial court indicated, was exacerbated by a change in the proposed class definition from that set forth in the third amended complaint: While the motion sought to certify a class limited to patients at Northridge Hospital Medical Center, rather than at any of Dignity Health's facilities in California, Sarun no longer restricted his proposed class to uninsured emergency care patients, instead seeking to include all patients who received any treatment or services at Northridge Hospital Medical Center and were billed directly at chargemaster rates or chargemaster rates less an uninsured discount. The modified definition thus included not only uninsured emergency care patients but also those who utilized elective services and those treated as outpatients.

As we explained in *Hicks v. Kaufman & Broad Home Corp.*, *supra*, 89 Cal.App.4th at page 916, courts are not limited to the class definition proposed in the certification motion. If necessary to preserve the case as a class action, a court may redefine the class to reduce or eliminate an ascertainability or manageability problem.[18] Here, restricting the class to uninsured emergency

---

[18] Although *Hicks* was addressing the court's authority to redefine a class because of issues relating to ascertainability, the same reasoning applies to manageability concerns created by a potentially overbroad class definition. (Cf. *Noel*, *supra*, 7 Cal.5th at p. 986 [court must give due consideration to how manageability concerns may be resolved before determining that

care patients at Northridge Hospital Medical Center, that is, to the category of patients identified in Sarun's operative pleading and at the single facility addressed in the certification motion, will greatly ease any manageability concerns with the rule 3.765(b) limited issue class that should be certified in this case.

## DISPOSITION

The order denying class certification is reversed, and the cause remanded with directions to certify a modified issue class as described in this opinion. Sarun is to recover his costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

practical difficulties in providing notice to absent class members weigh against class certification].)